IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WARD MANAGEMENT DEVELOPMENT COMPANY, LLC, et. al, | Civ. No. 17-00568 JMS-RLP |
| Plaintiffs, | ORDER GRANTING DEFENDANT'S MOTION TO DISMISS, ECF NO. 27 |
| vs. | |
| NORDIC PCL CONSTRUCTION, INC., | |
| Defendant. | |

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS, ECF NO. 27

## I. INTRODUCTION

Defendant Nordic PCL Construction, Inc. ("Nordic") moves to dismiss the First Amended Complaint ("FAC") filed against it by Plaintiffs Ward Management Development Company, LLC ("Ward Management"); Waiea Management Development Company, LLC; Victoria Ward, Ltd. ("Victoria Ward"); and 1118 Ala Moana, LLC ("1118 Ala Moana") (collectively "Plaintiffs").

The Motion to Dismiss raises three grounds for dismissal: (1) the action must be dismissed under Federal Rule of Civil Procedure 19(b) because a

non-party, the Association of Unit Owners of 1118 Ala Moana ("AOUO"), is required to be joined as a Plaintiff, and the AOUO's presence would destroy diversity of citizenship; (2) the court lacks complete diversity of citizenship because Victoria Ward is a Hawaii citizen (not a Texas citizen as the FAC alleges); and (3) before filing suit, Plaintiffs failed to comply with notice and mediation requirements of the Hawaii Contractor Repair Act (the "Act"), codified at Hawaii Revised Statutes ("HRS") Chapter 672E.

Much of the briefing and post-hearing activity has focused on the first two grounds, both of which implicate the court's subject-matter jurisdiction — normally a threshold inquiry. As has become apparent, however, after much thought on both issues and consideration of supplemental filings as to the Rule 19 issue, both grounds raise complicated questions that lack obvious answers. The posture thus calls for a quintessential application of a principle explained in *Sinochem International Co. v. Malaysia International Shipping Corp.*, 549 U.S. 422 (2007) — "a federal court has leeway 'to choose among threshold grounds for denying audience to a case on the merits.'" *Id.* at 431 (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999)).

Under *Sinochem*, the court need not decide the jurisdictional issues in order to resolve Nordic's Motion to Dismiss because it is obvious that Plaintiffs

did not satisfy Chapter 672E before filing suit. *See Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1227 (9th Cir. 2011) ("The *Sinochem* Court . . . promoted judicial economy by allowing the district court to dismiss the case without first having to address complicated jurisdictional issues."). That is, as explained to follow, Nordic prevails on the third ground raised in its Motion, a ground that does not rely on the merits of the dispute. The action is dismissed without prejudice under HRS § 672E-13 ("The court . . . shall dismiss, without prejudice, any action failing to meet the requirements of this chapter[.]").

## II. <u>BACKGROUND</u>

### A.    **Factual Background**

This diversity action arises from the construction of the Waiea Tower (the "Project"), "a 36-floor, high-rise, mixed-use building consisting of retail space and ultra-luxury residential units located in the Kakaʻako district of Honolulu." FAC ¶ 1, ECF No. 24. Plaintiffs are owners, former owners, and/or developers of the Project, and Nordic was the Project's construction manager and general contractor. *Id*. ¶¶ 1, 9-10. Victoria Ward, the original Project owner, is a limited signatory and third-party beneficiary to the construction management agreement ("CMA") between Nordic and primary signatory, Ward Management. *Id*. ¶¶ 7 & 10.

The FAC alleges claims for breach of contract, breach of warranty, and injunctive and declaratory relief, based on allegations that Nordic's work on the Project was substandard and untimely, and that Nordic actually obstructed completion of the Project and sales of units. *Id*. ¶¶ 1-5. Specifically, Count I alleges that Nordic breached the CMA because Nordic failed to reach "Substantial Completion" of the Project by the required dates. *Id.* ¶ 87. Count II alleges that Nordic is liable for breach of warranty provisions in the CMA regarding the "façade of the building" which is "emitting loud popping noises." *Id.* ¶¶ 94-95. And Count III seeks a declaratory judgment regarding related contentions by Nordic that Ward Management has improperly withheld payments due to Nordic for work performed under the CMA. *Id.* ¶¶ 100-107.

**B.      Procedural Background**

Ward Management filed the original complaint in this action by itself (i.e., as the sole Plaintiff) on November 21, 2017, asserting subject matter jurisdiction under 28 U.S.C. § 1332, diversity of citizenship. Compl. ¶ 10, ECF No. 1. Nordic moved to dismiss, arguing that Victoria Ward is a required party under Rule 19, and that Victoria Ward is a Hawaii citizen for purposes of § 1332 whose presence would destroy diversity. ECF No. 16. Ward Management responded by filing the FAC on January 24, 2018, adding Victoria Ward as a

Plaintiff (along with the other Plaintiffs). *See* FAC ¶¶ 8 to 10. The FAC alleges, however, that Victoria Ward is a Delaware Corporation with a principal place of business in Texas (not Hawaii) because its executive officers with decision-making authority direct and control the corporation's activities from Dallas, Texas (and thus is a Texas citizen for purposes of § 1332). *Id.* ¶ 10. Thus, the FAC again bases federal jurisdiction on complete diversity of citizenship with an amount in controversy exceeding $75,000.

On February 7, 2018, Nordic filed its Motion to Dismiss, arguing as a factual matter that — contrary to the FAC's allegations — Victoria Ward is a Hawaii citizen for purposes of § 1332.[1] Nordic also argues that the AOUO is a required party under Rule 19 whose presence would also destroy diversity; and that Plaintiffs failed to comply with provisions of HRS Chapter 672E, requiring dismissal without prejudice under HRS § 672E-13. Plaintiffs responded on April 9, 2018, ECF Nos. 31 & 32, and Nordic filed a Reply on April 16, 2018. ECF Nos. 33 & 34.[2] The court held a hearing on April 30, 2018. ECF No. 39.

---

[1] Nordic also filed a Motion for Abstention, ECF No. 28, asking the court to abstain under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). The court denied that Motion in open court on April 30, 2018. ECF No. 40.

[2] The court also considered supplemental authorities from both parties, submitted after the close of initial briefing. *See* ECF Nos. 36 & 38. In their submission, Plaintiffs also aptly

(continued . . .)

Under Rule 19(a)(1)(B), a person is "required to be joined if feasible" if, among other factors, "that person *claims an interest* relating to the subject of the action." *Id.* (emphasis added). At the April 30, 2018 hearing, a question arose as to whether the AOUO had or should have "claimed an interest" in the subject of this action under Rule 19. Plaintiffs relied on the AOUO's apparent silence in this regard, but the court recognized that some of Plaintiffs' officers are also directors of the AOUO (and thus those officers might have an inevitable conflict of interest where one or more of the Plaintiffs as developers could conceivably have potential liability to the AOUO or some of its unit owners). *See, e.g.*, *Raven's Cove Townhomes, Inc. v. Knuppe Dev. Co.*, 171 Cal. Rptr. 334, 343 (Cal. Ct. App. 1981) ("[A] developer and his agents and employees who also serve as directors of an association . . . may not make decisions for the Association that benefit their own interests at the expense of the association and its members.") (citations omitted)).

The court thus requested that the AOUO submit a letter to the court regarding its interest in, and intent regarding, this litigation. The AOAO submitted

---

(. . . continued)
objected by noting that Nordic's Reply violated Local Rule 7.5(e)'s word limit by repeatedly manipulating text to artificially shorten the word count (e.g., writing phrases such as "Exs.4(Striph),39,41(Randle),45,56(Apo)&Opp.Memo.p21(Johnstone)" without spaces so that the text is counted as one word rather than 15). The court has seen this tactic before in other cases, and exercises its discretion not to strike Nordic's Reply, but warns all counsel practicing in this court to avoid such unnecessary and potentially sanctionable conduct.

such a letter on June 18, 2018 from independent counsel, stating that "a committee [of the Board of the AOUO] composed of the independent Directors who are not affiliated with any of the developer entities" has "determined that it is not in the best interest of the AOUO and the unit owners to seek to intervene in the Litigation at this time," although it purports to retain rights to do so in future. ECF No. 54. The court allowed the parties to respond to that letter, *see* ECF No. 56, and both parties filed supplemental briefing on July 5, 2018. ECF Nos. 64, 65.

## III.  DISCUSSION

### A.  The Court "Bypasses" the Jurisdictional Issues

Both of the jurisdictional asserted grounds for dismissal raise substantive questions without obvious answers. The Rule 19 question regarding whether the AOUO is a required party whose presence would destroy diversity involves applying a rule in the Ninth Circuit that the absent party actually and formally "*claim* a legally protected interest." *Altmann v. Republic of Austria*, 317 F.3d 954, 971 (9th Cir. 2002) (emphasis in original). *See also, e.g.*, *Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1043-44 (9th Cir. 1983) (reasoning that the United States was not a necessary party in part because it had not asserted a formal interest in the action and instead "meticulously observed a neutral and disinterested posture"); *Ward v. Apple Inc.*, 791 F.3d 1041, 1051 (9th

Cir. 2015) ("[I]t is not perfectly clear whether ATTM has, in fact, asserted an interest in this action."); *Gemini Ins. Co. v. Clever Constr., Inc.*, 2009 WL 3378593, at *4 (D. Haw. Oct. 21, 2009) ("[W]here a party is aware of an action and chooses not to claim an interest, the district court does not err by holding that joinder [is] 'unnecessary.'") (quoting *Altmann*, 317 F.3d at 971) (other citations omitted); *Aliviado v. Kimoto*, 2012 WL 2974225, at *8 (D. Haw. July 19, 2012) (applying test).

Here, although the AOUO has not made a formal claim, its June 18, 2018 letter is equivocal — it tells the court that intervention is "not in [its] best interest . . . *at this time*." ECF No. 54 (emphasis added). And it implies it might seek to intervene later, stating that it "does not waive any of its rights by declining to intervene at this time." *Id.* And so, even if the Rule 19 question is answered now, the issues might simply arise again, albeit in a different posture, should the AOUO seek to intervene later.

Likewise, Nordic raises a factual (not facial) challenge to Victoria Ward's citizenship, which — although the court could certainly resolve it now — would still require a factual finding at a Rule 12(b)(1) stage, where the answer is not apparent. *See, e.g.*, *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (explaining differences between factual and facial challenges to subject

matter jurisdiction, and setting forth standards for deciding such questions). On one hand, Plaintiffs proffer strong prima facie evidence of decision-making by Victoria Ward that meets the relevant test of a corporation's "principal place of business" under *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010) (explaining that a corporation's principal place of business is "the place where [the] corporation's officers direct, control, and coordinate the corporation's activities. It is the place that Courts of Appeals have called the corporation's 'nerve center.'"). On the other hand, Nordic proffers extensive evidence where Victoria Ward has held itself out in leases, deeds, and other agreements — consistent with its large landholdings and long-standing presence in Honolulu — as having its principal place of business in Honolulu, Hawaii. *See* ECF Nos. 27-24 to 27-34.

In reviewing Nordic's Motion to Dismiss, the court contrasts these first two grounds for dismissal (which are relatively complicated) with the third ground (which is not). As explained to follow, the court easily concludes that Plaintiffs failed to satisfy certain prerequisites in HRS Chapter 672E before filing this suit. The posture thus exemplifies a prototypical application of *Sinochem* where a court need not resolve complex jurisdictional questions if another basis to dismiss is apparent and does not reach the merits of the dispute. 549 U.S. at 425

(holding that federal district courts may decide *forum non conveniens* motions without resolving jurisdictional issues).

*Sinochem* reiterated that "a federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)." *Id.* at 430-31 (citing *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 93-102 (1998)). A court "may not assume jurisdiction for the purpose of deciding the merits of the case." *Id.* (citing *Steel Co.*, 523 U.S. at 94). But although "jurisdictional questions ordinarily must precede merits determinations in dispositional order . . . there is no mandatory 'sequencing of jurisdictional issues.'" *Id.* at 431 (quoting *Ruhrgas*, 526 U.S. at 584). Rather "a federal court has leeway 'to choose among threshold grounds for denying audience to a case on the merits.'" *Id.* (quoting *Ruhrgas*, 526 U.S. at 584). *Sinochem* summarized:

> If . . . a court can readily determine that it lacks jurisdiction over the cause or the defendant, the proper course would be to dismiss on that ground. . . . But where subject-matter or personal jurisdiction is difficult to determine, and *forum non conveniens* considerations weigh heavily in favor of dismissal, the court properly takes the less burdensome course.

*Id.* at 436.

*Sinochem* reasoned that, because a *forum non conveniens* inquiry — directed at which forum is correct — is a "non-merits ground for dismissal," *id.* at 432 (citation omitted), courts may dispose of a case on that ground and "bypass[] questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant." *Id.* And *Potter v. Hughes*, 546 F.3d 1051 (9th Cir. 2008) later explained that, under *Sinochem*, "there are non-constitutional grounds on which we may dismiss a suit before considering the existence of federal subject matter jurisdiction," including "jurisdictional grounds that are discretionary . . . grounds of prudential standing, such as statutory standing . . . and grounds that are 'logically antecedent to the existence of any Article III issues[.]'" *Id.* at 1055 (citation omitted). That is, "[t]he *Sinochem* Court . . . promoted judicial economy by allowing the district court to dismiss the case without first having to address complicated jurisdictional issues." *Carijano*, 643 F.3d at 1227.

The same reasoning applies here, where the third ground for dismissal does not involve the merits at all — Nordic is arguing a procedural matter that Plaintiffs failed to comply with mandatory notice and mediation provisions in the Act before they filed suit, which has nothing to do with the substance of whether Nordic actually breached the CMA. This failure-to-exhaust argument is "logically

antecedent" to Article III jurisdictional issues. *Potter*, 546 F.3d at 1055. In this regard, the contention is equivalent to arguing that the parties must submit their dispute to arbitration, also a non-merits ground for dismissal. *See, e.g.*, *Ass'n of Owners of Kukui Plaza v. Swinerton & Walberg Co.*, 68 Haw. 98, 106, 705 P.2d 28, 34 (1985) ("Whether the alleged contractual violations should be presented to an arbitrator or to the court for determination 'is a matter wholly separate from . . . the merits of plaintiff's cause.'") (quoting *Local No. 438 Constr. & Gen. Laborers' Union v. Curry*, 371 U.S. 542, 548 (1963)). And other courts have concluded that *Sinochem* allows a court to address arbitrability without deciding jurisdictional issues. *See Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 289 F. Supp. 3d 819, 822 (S.D. Tex. 2017) (applying *Sinochem* and concluding that arbitrability may be decided without reaching whether the court has personal jurisdiction); *Ramasamy v. Essar Glob. Ltd.*, 825 F. Supp. 2d 466, 467 n.1 (S.D.N.Y. 2011) (determining that a case should be dismissed in favor of arbitration without reaching a motion to dismiss for lack of personal jurisdiction) (citing *Sinochem*).

In short, it makes sense here to "bypass" the jurisdictional issues. *Sinochem*, 549 U.S. at 432. The court thus proceeds to address the third ground asserted by Nordic in its Motion to Dismiss.

**B.**     **Plaintiffs Failed to Comply with the Act**

Nordic contends that the FAC must be dismissed because Ward Management (or any other Plaintiff) failed to comply with notice and mediation provisions of the Act before filing suit.

**1.**     ***The Act's Requirements***

HRS § 672E-2 provides that "[a]ll claimants filing an action alleging construction defects shall comply with this chapter; provided that this chapter shall not apply to any actions that include claims for personal injury or death."  The Act defines a "claimant" as "any person, entity, partnership, corporation, or association asserting a claim concerning an alleged construction defect."  HRS § 672E-1.  And it defines a "construction defect" as "a deficiency in, or arising out of, the design, specifications, surveying, planning, construction, supervision, or observation of construction of a dwelling or premises."  *Id.*  Under those definitions, the Act applies to the alleged construction defects at issue in this action.

///

///

///

///

///

Before filing an "action," the Act requires a claimant to comply with particular written notice and dispute-resolutions provisions, as set forth in pertinent part as follows:[3]

### § 672E-3.  Notice of claim of construction defect.

(a) A claimant, no later than ninety days before filing an action against a contractor, shall serve the contractor with a written notice of claim.  The notice of claim shall describe the claim in detail and include the results of any testing done. . . .

(b) A contractor served with a written notice of claim shall serve any other appropriate subcontractor with notice of the claim.  The contractor's notice shall include the claimant's written notice of claim.

(c) After serving the notice of claim, a claimant shall give to the contractor reasonable prior notice and an opportunity to observe if any testing is done.

The Act includes various provisions for rejecting the claim, repairing the construction defect, and making offers of settlement, *see* HRS §§ 672E-4 to 672E-6, including the following requirements (in relevant part):

The contractor, within thirty days after service of the notice of claim, shall serve the claimant and any other

---

[3] The Act defines an "action" as "any civil proceeding, including but not limited to arbitration, in which damages or other relief may be awarded or enforced with respect to an alleged construction defect."  HRS § 672E-1.

contractor that has received the notice of claim with a written response to the alleged construction defect that:

(1) Offers to settle without inspecting the construction defect . . . or

(2) Proposes to inspect the premises of the alleged construction defect . . . .

HRS §672E-4(b).

Within thirty days following any proposal for inspection under subsection (b)(2), the claimant shall provide access to:

(1) Inspect the premises;
(2) Document any alleged construction defect; and
(3) Perform any testing required to evaluate the nature, extent, and cause of the asserted construction defect, and the nature and extent of any repair or replacement that may be necessary to remedy the asserted construction defect;

provided that if the claimant is an association under chapter 514B . . . the claimant shall have forty-five days to provide such access.

§672E-4(c). And if those provisions do not result in a resolution, mandatory

mediation is required:

## § 672E-7. Mediation.

If the parties are unable to resolve the claim pursuant to section 672E-5 or 672E-6, all parties shall attempt to resolve the dispute through mediation, even if mediation

is not otherwise ordered or mandated by contract or by law.

If additional construction defects are discovered in the process, they would be subject to the separate notice and statutory dispute-resolution procedures, as follows:

### § 672E-9.  Additional construction defects.

A construction defect discovered after the notice of claim is served may not be alleged in an action until the claimant has given the contractor:

(1)  A written notice of claim regarding the alleged defect under section 672E-3; and

(2)  An opportunity to repair the construction defect or reject the notice of claim under section 672E-4.

The Act also requires contracts of sale of new structures or premises to include notice of a contractor's rights under the Act, as follows:

### § 672E-11.  Contract of sale; provisions.

(a) Upon entering into a contract for the sale of a new structure or the construction . . . of a premises, the seller of the new structure shall provide to the purchaser of the new structure, and the contractor . . . shall provide to the owner of the premises, notice of the contractor's right to resolve alleged construction defects before a claimant may commence litigation against the contractor.  The notice shall be conspicuous and included as part of the contract.

(b) The notice required by subsection (a) shall explicitly reference this chapter, and shall be in substantially the following form:

"CHAPTER 672E OF THE HAWAII REVISED STATUTES CONTAINS IMPORTANT REQUIREMENTS YOU MUST FOLLOW BEFORE YOU MAY FILE A LAWSUIT OR OTHER ACTION FOR DEFECTIVE CONSTRUCTION AGAINST THE CONTRACTOR[.] . . . NINETY DAYS BEFORE YOU FILE YOUR LAWSUIT OR OTHER ACTION, YOU MUST SERVE ON THE CONTRACTOR A WRITTEN NOTICE OF ANY CONSTRUCTION CONDITIONS YOU ALLEGE ARE DEFECTIVE. UNDER THE LAW, A CONTRACTOR HAS THE OPPORTUNITY TO MAKE AN OFFER TO REPAIR AND/OR PAY FOR THE DEFECTS. YOU ARE NOT OBLIGATED TO ACCEPT ANY OFFER MADE BY A CONTRACTOR. THERE ARE STRICT DEADLINES AND PROCEDURES UNDER THE LAW, AND FAILURE TO FOLLOW THEM MAY NEGATIVELY AFFECT YOUR ABILITY TO FILE A LAWSUIT OR OTHER ACTION."

Finally, the Act requires dismissal without prejudice of an action filed prematurely:

### § 672E-13. Dismissal without prejudice.

The court . . . shall dismiss, without prejudice, any action failing to meet the requirements of this chapter, unless:

(1) The failure to meet the requirements is the direct result of the wrongful conduct of another party;

(2) Circumstances beyond the control of the party prevented compliance; or

(3) An applicable statute of limitations on actions would
prevent the refiling of an action, in which case the action
shall be immediately stayed to provide the claimant with
an opportunity to comply with this chapter, but for no
longer than six months;

provided that the exceptions provided by this section to
any specific requirement of this chapter shall not excuse
a party from substantially complying with the remainder
of the chapter.

## 2.   *Application of the Act*

Nordic argues that prior to filing this action, Ward Management failed

to provide notice of its claim in accordance with § 672E-3, and failed to engage in

mediation as required by § 672E-7.  In response, Plaintiffs first contend that Nordic

failed to include a § 672E-11(b) notice in the CMA and thus waived its right to

protection under Chapter 672E.  They then argue that, in any event, Ward

Management did indeed comply with the Act.  Both arguments fail.

Initially, the CMA was a contact between Ward Management and

Nordic.  ECF No. 27-5.  A contractor is required to provide a § 672E-11(b) notice

to "the owner of the premises."  § 672E-11(a).  As alleged in the FAC, 1118 Ala

Moana is the owner of the Project, not Ward Management (which is the

"development manager").  Plainly, Nordic was not required to include a § 672E-

11(b)'s notice in the CMA.  And Plaintiffs could hardly have been prejudiced by

any such failure as they clearly knew of the Act's requirements as demonstrated by 1118 Ala Moana's inclusion of a § 672E-11(b) notice in sales contracts with individual unit owners. *See* ECF No. 27-23 at 17. Moreover, there is no basis for Plaintiffs' waiver argument — nothing in the Act suggests that claimants are excused under these circumstances from compliance with the Act even assuming such a notice was required in the CMA.[4]

Second, Ward Management clearly failed to provide notice of its claim in accordance with § 672E-3(a) prior to filing this action. Ward Management contends that a letter to Nordic dated May 17, 2017 satisfies HRS § 672E-3(a). In that letter, Ward Management referenced "issues concerning the curtain and window wall components of the façade of the Project." ECF No. 32-28 at 3. The letter informed Nordic that "[a]n investigation of these issues has commenced," and that upon completion of the investigation, "further notice will be provided." *Id.* The letter demanded that "if any defective work is discovered," it "must be remedied." *Id.*

---

[4] Even assuming that the omission in the CMA was "wrongful conduct" under § 672E-13(1), it could not have "directly resulted" in Ward Management's failure to comply with the Act under § 672E-13(1).

But the May 17, 2017 letter does not purport to be a letter under the Act, and is not the equivalent of one. It neither "describe[d] the claim in detail" nor "include[d] the results of any testing done" as required by § 672E-3(a). Nor was the letter served in accordance with § 672E-1, which defines "service" as "personal service or delivery by certified mail, return receipt requested." *See* Reply at 21, ECF No. 33. And Ward Management recently confirmed that the Project's AOUO also has not submitted a claim against Nordic for construction defects related to the window façade. *See* ECF No. 43-3.[5]

Finally, Plaintiffs did not engage in mediation as that term is defined by Chapter 672E. "Mediation" under Chapter 672E "means a process in which a mediator facilitates communication and negotiation between parties to assist them in reaching a voluntary agreement regarding their dispute." § 672E-1. Representatives of the parties had settlement discussions in an attempt to resolve their disputes on July 21, 2017, and October 3, 2017. *See* Herlitz Decl. ¶ 24, ECF

---

[5] Nordic sent a letter dated April 13, 2018 to Ward Management seeking confirmation that the Project's AOUO has not given notice to Ward Management, 1118 Ala Moana, or their affiliate Howard Hughes Corporation, "of any construction defect claim pursuant to [HRS] § 672E-3." ECF No. 33-19. As discussed at the April 30, 2018 hearing, Ward Management responded on April 20, 2018 by "confirm[ing] that the Association has not made any claim against Nordic." ECF No. 43-3 at 2. Nordic subsequently filed a Motion to Supplement the Record to include that response. ECF No. 43. Because the court reviewed this document and it was discussed at the hearing, the court GRANTS Nordic's Motion to Supplement the Record, ECF No. 43.

No. 32-1.  But it was not until February 26, 2018, that the parties "participated in a mediation session . . . with . . . a third-party mediator."  *Id.*  And even then, the mediation did not comply with the Act — the Act requires the contractor (Nordic) upon being served with a proper written notice of claim under § 672E-3 to then "serve any other appropriate subcontractor" and include other contractors in responses required under § 672E-4(b).  This is required before a Chapter 672E mediation occurs.

The Act thus clearly contemplates the involvement of all parties who may have some responsibility for the construction defects at issue.  It also requires that contractors be given "an opportunity to observe if any testing is done."  HRS § 672E-3(c).  And it has specific provisions regarding allowing contractors access to the premises and access to testing as part of a process to allow contractors an opportunity to repair defects or reject claims.  *See* HRS § 672E-4.  That these provisions were not followed also certainly indicates that Plaintiffs did not comply with the Act in either its May 17, 2017 letter or in any subsequent (post-suit) mediation.  *See* Kaneshige Decl. (Apr. 14, 2018) ¶¶ 2-12, ECF No. 33-3; Viola Decl. (Apr. 15, 2018) ¶¶ 4-10, ECF No. 33-4.

In sum, neither Ward Management nor any other Plaintiff complied with the notice and mediation requirements of the Act prior to filing this action. Thus, pursuant to HRS § 672E-13, the action is DISMISSED without prejudice.[6]

## IV. CONCLUSION

Nordic's Motion to Dismiss, ECF No. 27, is GRANTED because it is clear that Plaintiffs failed to comply with Hawaii's Contractor Repair Act, HRS Chapter 672E. The court thus need not reach Nordic's jurisdictional arguments. *See Sinochem*, 542 U.S. at 431. The action is dismissed without prejudice. The Clerk of Court shall close the case file.

IT IS SO ORDERED.

DATED: Honolulu Hawaii, August 3, 2018.



   /s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Ward Mgmt. Dev. Co. v. Nordic PCL Constr., Inc.*, Civ. No. 17-00568 JMS-RLP, Order Granting Defendant's Motion to Dismiss, ECF No. 27

---

[6] None of HRS § 672E-13's exceptions to dismissal without prejudice (such as a statute of limitations expiration that would prevent refiling of an action) are applicable.